IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| TRAVELERS CASUALTY & SURETY COMPANY,<br><br>    Plaintiff,<br><br>        v.<br><br>MUNICIPALITY OF SAN JUAN,<br><br>    Defendant, | CIVIL CASE NO. 17-1290 (PAD) |

**OPINION AND ORDER**

Delgado-Hernández, District Judge.

This is a breach-of-contract action derived from two municipal construction projects and a subsequent settlement agreement (Docket No. 1). On September 29, 2018, the court denied plaintiff's motion for summary judgment (Docket No. 90). At the time, it pointed out that a Memorandum and Order would follow. Id. Further review of the record and applicable law, however, has persuaded the court that the motion should be granted as to liability and denied with respect to sanctions and attorney's fees. Following are the grounds for the court's decision.

**I.    SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is "genuine" if it could be resolved in favor of either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). It is "material" if it potentially affects the outcome of the case in light of applicable law. Calero-Cerezo v. U.S. Dept. of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

All reasonable factual inferences must be drawn in favor of the party against whom summary judgment is sought. See, Shafmaster v. U.S., 707 F.3d. 130, 135 (1st Cir. 2013)(so noting). Conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative, however, will not suffice to ward off a properly supported summary judgment motion. See, Nieves-Romero v. U.S., 715 F.3d 375, 378 (1st Cir. 2013)(articulating principle). Based on these parameters, careful record review shows absence of genuine factual dispute as to the facts identified in the section that follows.

## II.  UNCONTESTED FACTS[1]

### A. The Parties

Travelers Casualty and Surety Company is organized under to the laws of the State of Connecticut, with principal place of business in that State. See, Docket No. 63-1, "Statement of Uncontested Material Facts in Support of Motion for Summary Judgment" ("SUMF" at ¶ 3). It is engaged in the subscription of payment and performance bonds. Id. The Municipality of San Juan is a municipality of Puerto Rico with legal capacity to sue and be sued. See, SUMF at ¶ 4.

### B. Agreements

On January 23, 2010, Travelers executed a General Agreement of Indemnity ("GAI") with Constructores del Este, S.E., pursuant to which the latter assigned to Travelers all rights, title and

---

[1] Except otherwise noted, the facts included in this section are drawn from the parties' Local Rule 56 submissions (Docket Nos. 63-1, 72-1). Local Rule 56 is designed to "relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." CMI Capital Market Inv. v. González-Toro, 520 F.3d 58, 62 (1st Cir. 2008). It requires a party moving for summary judgment to accompany its motion with a brief statement of facts, set forth in numbered paragraphs and supported by specific citations to the record, that the movant contends are uncontested and material. Local Civ. Rule 56(b) and (e). The opposing party must admit, deny, or qualify those facts, with record support, paragraph by paragraph. Id. 56(c) and (e). If a party improperly controverts the facts, the court may treat those facts as uncontroverted. See, Natal Perez v. Oriental Bank & Tr., 291 F.Supp.3d 215, 219 (D.P.R. 2018)(so noting). The opposing party may also present, in a separate section, additional facts, set forth in separate numbered paragraphs. See, Local Civ. R. 56(c). While the district court may "forgive" a violation of Local Rule 56, litigants who ignore the rule do so "at their peril." Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 219 (1st Cir. 2007).

interest in all contracts bonded by Travelers, including its rights to any and all sums due or which may become due under all bonded contracts to the extent of losses incurred by Travelers as surety of Constructores del Este.  See, SUMF at ¶ 5.

At some point, the Municipality entered into a contract with Constructores del Este for construction in a project known as "Remodelación de los Salones de Tutoría del Colegio Universitario" (the "Salones Project").[2]  See, SUMF at ¶ 6.  In partial consideration to the execution of the GAI, on May 16, 2014, Travelers issued and executed performance and payment bond number 106030159, naming Constructores del Este as "Principal" and the Municipality as "Obligee" in relation to the Salones Project, with a retainage fee of $36,907.23.  See, SUMF ¶¶ 7-9.[3]

On September 11, 2015, the Municipality entered into a contract with Constructores del Este as general contractor for construction of a project known as Remodelación Plaza Barceló (the "Plaza Barceló Project").  See, SUMF at ¶ 10.[4]   In partial consideration to the execution of the GAI, Travelers issued and executed performance and payment bonds number 106285820, naming Constructores del Este as "Principal" and the Municipality as "Obligee."  Id.  Problems, however, arose as to the performance of the contracted work and the Municipality: (1) declared Constructores del Este in default; (2) terminated the contract; (3) made a claim under the payment and performance bonds that Travelers had issued; and (4) claimed the amount of $182,000.00 in

---

[2] The date of the agreement is not clear from the summary judgment record.

[3] The retainage held by the Municipality as of May 18, 2016 was $38,656.04.  Yet, on December 23, 2016, the Municipality issued a check for $1,748.81 as partial payment (Docket No. 63-3).  Thus, the outstanding retainage is $36,907. 23.  The Municipality admitted that the retainage fee in the Salones Project is due and payable (Docket No. 63-5, Response No. 3), and the parties agree that nothing limits payment of the fee to funds deposited in the Government Development Bank ("GDB").  See, SUMF ¶ 23.

[4] The Municipality submitted copy of the Agreement at Docket No. 72-2 (Spanish Version) and 75-1 (certified English translation).  The parties do not question the validity of the Plaza Barceló Project's agreement nor dispute that it complies with all legal requirements.

liquidated damages. See, SUMF at ¶ 11. As a result, both Travelers and the Municipality received claims from suppliers, materialmen and subcontractors exceeding $1 Million. See, SUMF at ¶ 12. And to address related issues, on September 7, 2016 Travelers and the Municipality executed a Settlement Agreement, Release, and Assignment Agreement ("Settlement Agreement"). See, SUMF at ¶ 13; Docket No. 1-3.[5]

First, the parties acknowledged: (1) the agreement between Constructores del Este and the Municipality for the Plaza Barceló Project; (2) the Performance Bond Travelers had issued naming both Constructores del Este and the Municipality; (3) the default the Municipality declared alleging that Constructores del Este: (i) had failed to perform the work in accordance with the project agreement, (ii) failed to adhere to the schedule, and (iii) abandoned the Project; and, (4) that under the GAI, Travelers had been assigned all rights, title and interests, sums due and accounts receivable under any contract. Id. at pp. 1-2.[6]

Second, the parties agreed as to the accounting of Contract Funds balances pertaining to the Plaza Barceló Project, which included the amounts to be credited and paid to each party under the terms of the Settlement Agreement,[7] and recognized that the Contract Balance Including Retainage ($1,262,657,657.89) exceeded the cost of completing the Project.

---

[5] The Municipality was represented by its Deputy Administrator, Ms. Noelia Rosa Jaime (Docket No. 63-1, p. 1) and it expressed and warranted that it had "full power and authority to enter into and perform this Agreement, and that the person executing this Agreement on behalf of th[e Municipality] has been properly authorized and empowered to enter into this Agreement and to bind that party hereto." Id. at Section 13.Authority. Travelers was represented by its 2nd Vice President, Mr. Bruce L. Corriveau.

[6] These statements were included as part of the Recitals of the Settlement Agreement. Section 1 of the Terms and Conditions of the Settlement Agreement, however, specifically provides that the recitals are not "merely prefatory but are fully incorporated, which shall be deemed material and contractual, consisting part of [the] Agreement."

[7] The balances resulted in the net unpaid balance including retainage after considering the total adjusted contract sum, net certified work, net paid work to the Principal, net unpaid work, net amount to be paid to the Surety (which resulted from the gross amount to be paid to the Surety less the agreed upon liquidated damages, cost of corrective work, the 1 year warranty; plus the credit on account of materials on site, and credit on account of down payment to suppliers), etc.

Third, the Municipality determined that the best interest of the government was served by immediately entering into a direct contract with an unidentified completion contractor to expeditiously complete the project. Travelers accepted the Municipality's determination to complete the project, and, except for the net amount of $300,000.00 to be paid by the Municipality, released and relinquished in favor of the Municipality any right, titled and interest over the remaining contract funds to be used by the Municipality to complete the Project. See, Settlement Agreement, Terms and Conditions Sections 2 and 3.

Fourth, in connection with payment, the parties agreed that:

> Within sixty (60) calendar days from the date of the execution of this Agreement, [the Municipality] shall make payment to the [Travelers] in the amount of $300,000.00. This is the Net Amount to be Paid to the Surety agreed by the Parties in paragraph 2 of this Agreement and said amount shall not be subject to any offset, defense, claim, counterclaim or any diminution of any type, find or nature whatsoever of the Municipality. The Net Amount to be Paid to the Surety will be used by the Surety to pay for the Claims or for reimbursement of paid Claims, as this term is defined in the WHEREAS E of this Agreement.

See, Settlement Agreement, Terms and Conditions Section, ¶ 4. Despite the obligation entered into, the Municipality did not pay, leading Travelers to demand payment and threaten legal action. See, SUMF at ¶¶ 15, 16. But no payment was made, and this case ensued.[8]

C. Litigation

Count I of the complaint alleges the Municipality breached the Settlement Agreement (Docket No. 1 at ¶¶ 15-20) and, accordingly that Travelers is entitled to payment of the

---

[8] On July 7, 2017, the Municipality filed a Third-Party Complaint against the GDB (Docket No. 28), claiming that (1) the GDB had "absolute disbursement control of some and/or all monies claimed by Travelers by virtue of the Municipality's loan 'empréstito' to the GDB" (id. at ¶ 2); (2) the GDB failed to disburse the Municipality's monies and, therefore, is "the only one responsible for the non-payment of plaintiff's claims" (id. at ¶ 4); and (3) the GDB's own acts and omissions are "the only factors" that have caused the non-payment to plaintiff (id. at ¶ 6). The GDB moved to dismiss the Third-Party Complaint (Docket No. 40). In response, the Municipality moved for voluntary dismissal without prejudice as to the GDB (Docket No. 57), which the court granted (Docket Nos. 60, 62).

$300,000.00 corresponding to the Net Amount to be Paid to the Surety after the accounting contemplated in the agreement. Count II, in turn, asserts violation of the Municipality's obligation to release a "retainage" upon completion of the Salones Project in the amount of $38,656.04. Id. at ¶¶ 21-26. Finally, the complaint requests: (1) payment of the amounts allegedly due, interest, costs and attorney's fees; and (2) a declaration that the Municipality "has been temerary" by failing to comply with its payment obligations. Id. at pp. 6-7. The Municipality answered the complaint essentially denying liability and raising various affirmative defenses (Docket No. 25). Thereafter, Travelers moved for summary judgment as to all its claims (Docket No. 63), the Municipality opposed Traveler's motion (Docket No. 72), and Travelers replied (Docket No. 77).[9]

### III.  DISCUSSION

**A. Breach-of-Contract Claim**

To prevail and recover on a breach-of-contract claim in Puerto Rico, a party must prove: (i) a valid contract; (ii) a breach of that contract; and (iii) resulting damages. See, Rishell v. Medical Card System, Inc., 925 F.Supp.2d 211, 2016, 220 (D.P.R. 2013)(applying formulation). The Municipality entered into undeniably valid contracts: the Settlement Agreement and the Salones Project Agreement.[10] Pursuant to Paragraph 4 of the Settlement Agreement, the Municipality had to pay Travelers within 60 calendar days from the date of execution –September

---

[9] In response to Traveler's SUMF, the Municipality admitted all of the supporting statements, with qualifications as to SUMF ¶¶ 17, 19 and 22, essentially admitting it has not paid Travelers the $300,000.00 contemplated in the Settlement Agreement because the GDB has not disbursed the funds. In addition, the Municipality submitted three additional statements of uncontested facts, in support of its position (Docket No. 72-1), to the effect that: (1) the Settlement Agreement:(i) lacks a provision for budget account allocation as to the amount to be paid, and (ii) does not contain a provision limiting payment from the GDB because when drafted, Travelers objected to that language even though the Municipality wanted to include it; and (2) the agreed upon payment was going to be disbursed from the municipal loan ("empréstito") account corresponding to the Barceló Project at the GDB. Id. Travelers denied these statements (Docket No. 77-1) as (1) false, (2) immaterial, and (3) unsupported (Docket No. 77-1, pp. 1-3).

[10] The Municipality argues the Settlement Agreement is void for lack of a budget allocation provision (Docket No. 72, p. 4). As discussed below, however, the argument lacks merit.

7, 2016– the amount of $300,000.00. The retainage for the Salones Project was $36,907.23, an amount due to Travelers by virtue of the GAI. The term for payment elapsed, the Municipality failed to pay, and as a result, Travelers suffered damages in the amount of $300,000.00 for monies owed and not paid under the Settlement Agreement (plus legal interest since November 7, 2016); and $36,907.23 for the retainage owed and not paid in connection with the Salones Project Agreement (plus legal interest since May 19, 2016).

### B. The Municipality's Defenses[11]

#### a. Municipal Contract Requirements

The Municipality does not question the $36,907.23 owed and not paid for the retainage under the Salones Project, and concedes that it has not paid the $300,000.00 due under the Settlement Agreement. Instead, it alleges the Settlement Agreement is void because to be valid, municipal contracts in Puerto Rico must include a budget account identifying the source of payment, that is, "from where the money is to be paid," and in its view, the Settlement Agreement does not satisfy this requirement (Docket No. 72, pp. 2-3).

Careful review of the Settlement Agreement confirms that all payments and credits referred to therein are from the monies the Municipality set aside in the Plaza Barceló construction contract, to pay for that Project. In particular, Section 2 provides that the parties agreed on an "… accounting of the Contract funds balances, to be credited and to be paid under the terms of this Agreement…" See, Docket No. 1, Exh. III, Terms and Conditions, Section 2. And "Contract" is defined as the September 11, 2015 agreement entered into between Constructores del Este and the

---

[11] The Municipality did not raise these defenses in its answer. See, Docket No. 25, p. 5 (listing affirmative defenses). Neither did it amend the answer to include the defenses within the term set in the Case Management Order (Docket No. 56) nor request an extension of time to do so. What is more, it has not explained why the defenses were not reasonably available when the answer was filed. In consequence, the defenses may be considered waived. Notwithstanding this problem, in the interest of completeness and because in the end the defenses do not serve to relieve the Municipality of its obligation to pay, the court considers them.

Municipality for the Plaza Barceló Project. Id., Recitals, A. On this view, the budgetary allocation for the disbursements is found in the account and monies set aside for the construction of the Plaza Barceló (Docket No. 72-2, Section 5.1), and the Municipality does not question the legality of the Plaza Barceló agreement. But beyond that, the obligation to pay $300,000.00 to Travelers is set in Paragraph 4 of the Settlement Agreement, which states that the amount will be paid from Paragraph 2's accounting of the funds in the Plaza Barceló Project. See, Docket No. 1, Exh. III, Terms and Conditions, Section 4. As such, the nullity contention fails.

### b. *Rebus Sic Stantibus*

Invoking *rebus sic stantibus,* the Municipality asks the court to modify or reduce the payment obligation under the Settlement Agreement (Docket No. 72, pp. 4-12). To this end, it basically claims to have been deprived of GDB funds for the Barceló Project, which prevented it from making the required payment and made the Project Barceló's contract –and the subsequent Settlement Agreement– unjust, oppressive and impossible to comply with. Id.

Broadly stated, *rebus sic stantibus* is a mechanism that serves to adjust or set aside a debtor's contractual obligations "when unforeseeable circumstances render strict compliance with the contract unfair." López-Morales v. Hospital Hermanos Meléndez, 460 F.Supp.2d 288, 291-292 (D.P.R. 2006). The mechanism is not specifically included in, or regulated by the Puerto Rico Civil Code. Id. Nevertheless, it may be used as an exceptional remedy. See, Casera Foods v. E.L.A., 108 D.P.R. 850, 857 (1979), 8 P.R. Offic. Trans. 914 (examining doctrine on subject).[12]

---

[12] As articulated in Casera Foods, Inc., 108 D.P.R. at 850, 856, application of *rebus sic stantibus* is subject to a showing that: (1) there be a contract whose execution, in whole or in part, be deferred until a future time; (2) the contract not be aleatory or fundamentally speculative in nature; (3) after the parties entered into the contract, an unforeseeable circumstance arises, a circumstance with some signs of permanence; (4) as a result thereof, there be an extraordinary difficulty or aggravation of the conditions surrounding the concession to be made by the debtor, so that it becomes significantly more costly for him to comply with the obligation; (5) the parties' actions be free of deceit, since there are other mechanisms to attend that problem; and (6) the interested party move the court for relief.

Because it allows for an attenuation of that which is required of the parties under a contract, it stands as a counter force to the rule embodied by the *pacta sunct servanda* axiom, set forth in Article 1044 of the Civil Code, P.R. Laws Ann. tit. 31 § 2994.  See, López-Morales, 460 F.Supp. 2d at 291 (so recognizing).[13]

In this light, the Municipality alleges that *rebus sic stantibus* should be applied because: (1) the GDB was supposed to provide financing for the project; (2) the Municipality lacked control over the sudden discontinuance of GDB-fund disbursements and has no other accounts or budget available to meet this obligation; (3) that situation, coming out of the GDB's financial crisis and restructuring process, was unforeseen; (4) the agreement is not aleatory; (5) no fraudulent acts were committed; (6) the contract for the Plaza Barceló Project was not one of immediate completion; and (7) the Municipality as interested party is petitioning the court to apply *rebus sic stantibus* (Docket No. 72, pp. 7-12).  The court is not persuaded by the Municipality's reasoning.

The contract requiring payment was entered into in September 2016, approximately four months after in May 2016, the GDB defaulted on payments to its bondholders.  See, Act 5 of January 29, 2017, Statement of Motives, Section I, p. 4 (noting that as of May 1, 2016, the GDB was in breach of its obligations to bondholders).  If that default triggered the Municipality's breach here, it does not qualify as an unforeseeable event taking place after the contract was executed. The change in circumstances would have occurred before the parties executed the contract, not after.  Additionally, if as the Municipality suggests, payment by the GDB was not included as a contingency in the Settlement Agreement because Travelers rejected the Municipality's proposal that it be so included (Docket No. 72-1, p. 5, ¶ 2; Docket No. 63-5, p. 8, ¶ 7), the nonpayment

---

[13] Article 1044 provides that "[o]bligations arising from contracts have legal force between the contracting parties, and must be fulfilled in accordance with their stipulations."

cannot be considered unforeseeable, for the Municipality was aware of that scenario when it accepted the agreement. And the Municipality did not present evidence that under these conditions, the obligation is significantly more costly to comply with. An economic crisis, without more, is not considered an unforeseeable circumstance justifying modification of contractual terms through *rebus sic stantibus*. See, Oriental Bank, 192 D.P.R. 7, 27-28 (2014)(addressing and applying formulation).[14] For that reason, Travelers' request for payment of the amounts due plus interest must be granted.

### C. Attorney's fees and economic sanctions on San Juan's counsel

Travelers seeks the imposition of attorney's fees against the Municipality because of what it has characterized as the Municipality's obstinacy under Rule 44.1(d) of Puerto Rico's Rules of Civil Procedure, which requires that attorney's fees be imposed on a party that "has acted obstinately or frivolously." P.R. Laws Ann. tit. 32, App. III, R. 44.1(d) (Docket No. 63 at pp. 8-19). Furthermore, Travelers requests imposition of economic sanctions against the Municipality's initial record counsel pursuant to 28 U.S.C. § 1927, which provides that "any attorney or other person admitted to conduct cases in [this court] who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct" (Docket No. 63, pp. 19-23; Docket No. 89). Neither the Municipality nor its record counsel addressed these requests.

Careful review of Travelers' arguments shows that the Municipality's actions did not promote pre-suit resolution of the issues as the court would have expected and did not follow the most appropriate post-suit approach toward disposition. They were close to the line demarcating

---

[14] Slip Official Translation included as Exhibit A.

sanctionable from non-sanctionable behavior under Rule 44.1(d) and Section 1927. Travelers's asserted frustration and requests for sanctions and fees are thus understandable. Nevertheless, the court will not grant the requests. While Travelers properly laid out the facts which in its view support the requests and cited to cases related to various propositions included in its argument, it did not refer to, or discuss, cases where, in light of analogous facts and circumstances, sanctions and fees were imposed under Rule 44.1(d) and Section 1927, specifically linking the corresponding court's ruling under those provisions to the facts and circumstances underlying the ruling.

## IV.    CONCLUSION

For the reasons stated, Travelers' motion for summary judgment (Docket No. 63) is GRANTED IN PART and DENIED IN PART. Judgment shall be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico, this 29th day of April, 2019.

s/Pedro A. Delgado Hernández
PEDRO A. DELGADO HERNÁNDEZ
United States District Judge